Hackford v. The New York Central Railroad Co.

PHILIP HACKFORD, Administrator, &c., v. THE NEW YORK CENTRAL RAILROAD COMPANY.

(GENERAL TERM, FOURTH DEPARTMENT, DECEMBER, 1871.)

The plaintiff's intestate, while driving rapidly over the defendant's street-crossing in a heavy storm of snow and wind, was struck by its train of cars and instantly killed. The crossing was at an elevation above, and visible for half a mile along, the street, and near it approaching trains could be seen at the distance of 1,400 feet. Notice of the crossing had been removed, and the train approached at a speed of twenty miles per hour without signal, by bell or whistle. The deceased had occasionally driven over the crossing; and a teamster, whom he passed just before reaching it, and who saw the train, called to him to stop, and the call was heard by one seven or eight rods from the crossing. Another standing on the street ten rods from the track noticed the train when some six rods from the crossing, but a cart had just passed over and the driver neither saw nor heard it before crossing, nor on account of the storm could he see beyond his horses' heads without a sharp look-out. *Held*, in an action by the administrator to recover against the company, that the question of contributory negligence should have been submitted to the jury, and a non suit was error.

In an action to recover on the ground of the defendant's negligence, the plaintiff need not allege or make proof that he is free from concurrent negligence.

But, it seems, if on the trial there is evidence of plaintiff's negligence, from his own or defendant's witnesses, he must disprove it to entitle himself to a recovery.

MOTION by the plaintiff, upon a case and exceptions, for a new trial, ordered to be heard in the first instance at General Term. The facts are stated in the opinion.

Present—MULLIN, P. J.; JOHNSON and TALCOTT, JJ.

MULLIN, P. J. The plaintiff, as administrator, brought this action to recover damages for the killing of William Hackford, at Geddes, in the county of Onondaga, in December, 1869, by reason of the negligence of the employes of the defendant.

The deceased was driving his team from the city of Syracuse to his residence, some fifteen miles from that city. It was a very stormy day. Snow was falling, and the wind blowing very hard. The street along which the deceased was driving runs east and west at the railroad crossing where the accident occurred, and it crosses the track at nearly right angles.

The deceased was going west. The engine by which he was struck was moving south, at a speed of about twenty miles per hour. There was no sign up, indicating that there was a railroad crossing at the place of the accident; the sign that had been up having been removed. A carman, with furniture in his cart, crossed the track just before the deceased attempted to cross. There was one other team approaching the track from the east. The driver of the other team stopped, seeing the approaching engine, and cried whoa to the deceased just before he got on to the track. The deceased did not regard it, but drove on and was instantly struck and killed.

On the trial the plaintiff's witnesses testified to the foregoing facts, and also that, as the engine approached the track, the bell was not rung, nor was the whistle blown. These omissions of duty, together with the rate of speed, and absence of a sign indicating the crossing, constituted the negligence on the part of the defendant.

The defence set up in the answer were, first, a general denial; and, second, concurring negligence on the part of the intestate.

The evidence of negligence on the part of the defendant was,

1st. That the railroad track could be seen by a person going from Syracuse toward the crossing for a distance of some half a mile except where houses intervened.  The track was higher than the land on either side, and higher than the street.  Near the crossing a train could be seen for a distance of 1,400 feet in one direction, and the eighth of a mile in the other.

Henry C. Allen testified that he had in Geddes a house on the north side of Genesee street, some six to ten rods from the crossing.  He was in the street at the time of the accident, and saw the train approaching when it was within five or six rods of the crossing.

Michael Ready testified that he lived in Geddes, on the north-west side of Genesee street and east of the railroad. At the time of the accident he was standing seven or eight rods from the crossing; heard a man shouting "whoa;" looked up and saw the train passing, and just about same time saw the smoke-stack of the engine; and then the collision occurred almost instantly, not half a second after he heard the cry "whoa." The intestate, with his team, passed along pretty swift. When he first saw the intestate he was within a rod of the track; and when he saw the engine the intestate was going right on to the track.

McDonald was the person driving the team approaching the track.  Deceased passed McDonald pretty fast, when the latter cried "whoa;" he was turned out so that the deceased might pass him.

Justin M. Woodford testified that the storm was very severe; so severe that you could not see many rods.

It was also proved that the deceased traveled occasionally to and from Syracuse on Genesee street.

Henry D. Gregory was the carman who crossed the track ahead of deceased; and he testified that before he crossed he

did not see or hear the cars. He could not see, by reason of the storm, any further than the horses' heads; not unless he looked pretty sharp.

Upon this evidence the plaintiff was nonsuited, on the ground that the deceased was himself guilty of negligence.

The plaintiff's counsel asked the court to submit the question of concurring negligence to the jury.

The request was refused, on the ground that there was not sufficient evidence to go to the jury; and to this ruling the plaintiff's counsel excepted, as he did to the granting of the nonsuit.

The court committed a grave error in refusing to submit the question of the concurring negligence of the deceased to the jury.

Had the day been a fair one, so that there was nothing to prevent from seeing and hearing an approaching train, I should be of opinion that the deceased would have been chargeable with the grossest negligence.

The day was a very stormy one. The wind was high, and snow falling in large quantities, and, of course, it was carried by the wind against the faces of those traveling against the wind. From what point of the compass the wind was blowing on the day of the accident does not appear in the case; but it does appear that the man who crossed the track just ahead of the deceased could not see further than his horse's head unless he looked pretty sharp. There is no evidence that a person approaching the track could see an approaching train at a greater distance than six rods from the crossing.

If the train was moving twenty miles per hour, it would move the distance of six rods in a little over a second. If, then, we could assume that the deceased saw the engine six rods before it reached the crossing, he had no time to save himself; he must have been on the track and escape impossible. If we assume that he did not look for an approaching train, and it would, under ordinary circumstances, be negligence not to look, yet when it is demonstrated that if he had looked he could not have escaped injury or death, surely his

right to recover of the party whose negligence caused the injury would not be denied him.

Again, it was shown that the man who crossed ahead of him did not hear the approaching train, and, by reason of neither hearing nor seeing it, almost lost his life; must we not assume that the deceased did not hear it, and, therefore, his senses failed to apprise him of his danger? Is it probable that two men rushed recklessly into the jaws of death, having knowledge that death was imminent? If we are to indulge in presumption, is it not the natural one that men use their senses for their protection, when they have reason to suppose that danger is impending?

If, upon the evidence given by the plaintiff, the jury could reasonably find that by reason of the storm the deceased could not, in the absence of the ringing of the bell or blowing the whistle, ascertain the approach of a train in time to escape a collision with it would not a verdict for the plaintiff have been sustained? That such a state of facts might have been found upon the evidence I entertain no doubt.

It was, therefore, the duty of the court to submit the question to the jury as to the concurring negligence of the deceased, and, because the request to submit it was refused, a new trial must be granted.

The learned judge said, in granting the nonsuit, that the plaintiff had the affirmative of showing that he was free from any negligence that contributed to the production of the injury. This remark cannot be the ground for granting a new trial, if it is erroneous; but it may be taken into consideration in determining the weight the court gave to the evidence of the concurring negligence of the deceased, when it refused to submit the question to the jury. If the learned judge intended to hold that a plaintiff is bound to allege, in a complaint in an action for damages resulting from an injury caused by the negligence of the defendant, and to prove affirmatively on the trial he (the plaintiff) was not guilty of any negligence that contributed to the injury, he was mistaken. The concurring negligence of the plaintiff is

matter of defence, and the plaintiff is under no obligation to prove anything, to entitle him to recover, but the injury, and that it was caused by defendant's negligence.

No precedent of a common-law declaration in case for negligence can be found, I think, in which the plaintiff asserts that he was free from negligence, nor any decision that he is bound to make such proof. (See Precedents of Declarations in Case for Negligence, 3 Chitty's Pleadings.) But when, on the trial, there is evidence of negligence on the part of the plaintiff, whether it comes from the plaintiff's or defendant's witnesses, the plaintiff must overcome it, in order to entitle himself to recover. In this way, and in this way only, is the plaintiff bound to disprove his own negligence.

To meet the views of the court, that plaintiff had the burden of proving the absence of negligence affirmatively, a higher degree of proof was demanded than he was bound to make, and thus wrong was done to the plaintiff. If, however, the court merely meant to say the plaintiff's own evidence shows his negligence, and that it concurred to produce the injury, he must, therefore, give evidence to rebut the inference of negligence resulting from the evidence he had himself given, he was, doubtless, correct. If the plaintiff's witnesses proved defendant's defence, it was as available as if proved by itself. This construction of the charge would hardly be consistent with the proposition that the plaintiff held the affirmative of disproving negligence. If he had, it must follow that the law presumed negligence against him. On the contrary, negligence is never presumed, but must be affirmatively proved.

There must be a new trial, with costs to abide the event.

New trial granted.