[No. 852.]

WILLIAM SOLEN, Respondent, v. VIRGINIA AND TRUCKEE RAILROAD COMPANY, Appellant.

Action against Railroad Company—Damages for Personal Injuries—Nonsuit.—S. was walking on his regular route from his work at the Ophir mine, along the track of the V. & T. R. R. Co., on a public street, much frequented by foot passengers in Virginia city; there was no sidewalk or passage-way provided along the street; there was a heavy snow storm with such high winds as to prevent his seeing more than ten feet ahead of him; there was snow on the rails which deadened the sound of the engine or train on the track; he was at a place where it was the usual custom of the railroad company when moving its trains or locomotives to give signals either by the whistle of the locomotive, or the ringing of the bell; he was looking ahead whenever he could and was listening for the sound of the whistle or bell, which he could have heard if such signals had been given; none was given; he was, without any warning, knocked down by a locomotive or tender backing along the track near a regular crossing: Held, that upon this statement of plaintiff's case, the court did not err in refusing to grant a nonsuit.

Idem—Duty of Plaintiff—Reasonable Care—Contributory Negligence.—A plaintiff is bound to use due and reasonable diligence, and to exercise ordinary care and prudence he must use his ordinary faculties in protecting himself from danger, and if he fails to use his eyes or ears, having the opportunity and ability so to do, then the court is authorized to grant a nonsuit upon the ground of contributory negligence.

Idem—Degree of Danger.—The plaintiff's prudence is to be measured in proportion to the danger. The greater the risk the greater the degree of care required.

Idem—Duty of Defendant.—A railroad company, when moving its locomotives or trains upon the public streets of a city, is bound to use due care and give some signal of their approach.

Idem—Presumption that Signals will be Given.—A person walking along a track on a public street, in a city, has a right to presume, and act on the belief, that the railroad company will not move its locomotives or cars along such track without giving the usual signals.

Idem—Negligence—When a Question of Law or Fact.—When the facts showing a want of ordinary care and prudence on the part of the plaintiff, are clear and undisputed, the question of negligence is one of law, to be decided by the court; but when there is any doubt, or uncertainty; any question in regard to which reasonable men might honestly differ in opinion, then the question of negligence becomes a question of fact, and should be submitted to a jury.

Idem—New Trial—Verdict Against Evidence.—It is not the province of the appellate court to weigh the evidence in order to determine the preponderance thereof; that duty devolves upon the jury and the *nisi prius* court. If there is a substantial conflict in the evidence, this court will not disturb the verdict.

Idem—Damages When not Excessive.—The plaintiff was thirty-four years of age, a miner by occupation; by the accident his right shoulder and some of his ribs were broken; one of his legs had to be amputated; he had severe pains through his breast and sides, was confined to his bed five or six weeks; his right shoulder and arm were disabled. He has no means of support except by his personal labor: *Held*, that the verdict of fifteen thousand dollars is not so excessive as to indicate passion or prejudice upon the part of the jury.

Public Street—Denials in Answer—When Insufficient.—The track of defendant runs along E street in Virginia city. The complaint alleges in positive terms that this was "a public street of said city; the answer denies that the plaintiff was rightfully or lawfully walking on its track at the time of the injury, or that the public were accustomed to walk thereon, or that they had any right so to do:" *Held*, that these averments in the answer did not constitute a denial of the allegation in the complaint that defendant's track was on a public street.

Instructions—When Verdict will not be Set Aside.—A verdict ought never to be set aside simply because some expressions of the court, in its charge to the jury, might, in some particulars, when considered apart by themselves, be susceptible of verbal criticism which, when taken and considered with other portions of the charge, could not possibly have misled a jury of ordinary intelligence.

Instructions—Reasonable Care—Danger—Known Disposition of Men.— The court instructed the jury as follows: "In considering the question of reasonable care and prudence on the part of the plaintiff, William Solen, the jury have a right to take into consideration, together with the other facts of the case, the known and ordinary disposition of men to guard themselves against danger:" *Held*, not prejudicial to the defendant.

Idem—Rule of Damages.—The court instructed the jury as follows: "In cases of this character the law does not prescribe any fixed or definite rule of damages, but leaves their assessment to the good sense and unbiased judgment of the jury:" *Held*, not erroneous.

APPEAL from the District Court of the First Judicial District, Storey County.

The complaint, with reference to the question whether E street is a public street—alleges: "That on or about the twenty-fifth day of February, 1876, between the hours of six and seven o'clock in the morning of said day, the said plaintiff was returning to his home from his work as a miner in the North Consolidated Virginia mine, in the Virginia Mining District, Storey county, and state of Nevada, and for the purpose of returning as aforesaid, was walking along "E" street, a public street in the city of Virginia, state of Nevada, upon which is constructed the said railroad track of the said defendant, as he, the said plaintiff, might rightfully and lawfully do, and as the public are accustomed to do, and rightfully do."

The answer denies "that plaintiff was rightfully or lawfully walking on its road at the time of the injury by him alleged, or that the public are, or ever were, accustomed so to do, or that they have any right so to do. Defendant avers that any one who walks on its road at the point by plaintiff designated, does so against its consent and at his or her own great peril."

The instructions of the court, referred to in the opinion, read as follows: "The plaintiff has brought this action to recover from the defendant the sum of forty thousand dollars, for injuries resulting from an accident which it is claimed was caused by carelessness and negligence on the part of the employees of defendant, a railroad company. It is admitted that, on the twenty-fifth of February last, an engine belonging to the defendant ran on the plaintiff and produced serious injuries. The first question for you to determine, and which is disputed, is, did this accident result from the carelessness of the employees of the railroad company? If so, the defendant is responsible. The next question which is presented by the testimony is, did the plaintiff in the action contribute by his carelessness to the injury or accident? If so, he cannot recover. The question of negligence, by which is meant that want of care and dili-

gence which it is the duty of a party to observe, is always one which must be considered in regard to the circumstances. There is no absolute rule of negligence or diligence. The diligence required of a party is that care and attention to the matter in hand which an ordinarily prudent, careful man would exercise in regard to his own transactions.

Whether the parties exercised or failed to exercise diligence, is a question for the jury to determine; and under the circumstances of this case, both the plaintiff and the defendant were bound to use reasonable diligence, the plaintiff to avoid receiving injuries and the defendant to avoid committing injury. Reasonable care is that care which men of ordinary prudence are accustomed to employ, and which, placed in like circumstances with the plaintiff, they would have employed. The evidence of proof of negligence on the part of defendant is upon the plaintiff, and the jury must be satisfied from the evidence that defendant and its employees were negligent, before they can find a verdict for the plaintiff. In considering the question of reasonable care and prudence on the part of the plaintiff, William Solen, the jury have a right to take into consideration, together with the other facts of the case, the known and ordinary disposition of men to guard themselves against danger.

The law imposes the duty on railroad companies to exercise reasonable care in the running of engines and to adopt proper precaution against accidents likely to happen by reason of the railroad; and the faulty neglect of a railroad company in these respects, when satisfactorily shown, subjects it to liabilities for injuries caused thereby. If the jury believe that at the place where the accident occurred to plaintiff the defendant's railroad track is laid in a public and much frequented street, at the city of Virginia, then the defendant was bound to use reasonable care and diligence, by ringing the bell, sounding the whistle, or otherwise giving sufficient signals of the approach of the engine to avoid committing injury; and if the jury believe the defendant failed to give such signals, then the defendant is liable to the plaintiff for the damage sustained by him, un-

less the jury also believe that the plaintiff failed to use reasonable care and caution to avoid receiving injury, and by such want of care contributed to the accident.

The plaintiff was required to exercise that degree of prudence, care and caution incumbent on a person possessing ordinary reason and intelligence, under the special circumstances of the case, having regard to its being a railroad track on which he was passing at the time of the accident. The plaintiff in this case cannot recover, unless you shall be satisfied from the evidence that he was free from negligence or blame in the matter which contributed to the accident.

The plaintiff was required to exercise proper care as well as the defendant and its servants, and if by the exercise of such care the plaintiff could have avoided the danger, he was guilty of negligence, and he, in such case, is not entitled to recover. If the plaintiff while walking on the track was guilty of any negligence contributing to, or towards his injury, he cannot recover in this action; the negligence, if any, of the employees of the railroad company will not excuse the negligence of the plaintiff, and if his want of care contributed to the accident, he cannot recover notwithstanding the employees of the railroad company may have been negligent. If the jury believe from the evidence that the plaintiff might, by the exercise of ordinary care, have escaped the accident whereby he was injured, then he was guilty of contributory negligence, and you will find a verdict for defendant. The railroad company being in the rightful possession of the street, was lawfully entitled to run its railway engines, tenders and cars, on and along its track, and plaintiff had no right to walk on the track when being used by the defendant, and his presence there was negligence on his part unless you believe he was using every diligence and care to avoid injury. In cases of this character the law does not prescribe any fixed or definite rule of damages, but leaves their assessment to the good sense and unbiased judgment of the jury, and if the jury find for the plaintiff, then in fixing the amount of damages, the jury may take into consideration not only the

amount of damages which the plaintiff suffered prior to the commencement of the action, but also all the damage preceding, continuously from the injury complained of which he has suffered up to the verdict, and which it is reasonably certain that he will suffer in the future.".

The other facts are sufficiently stated in the opinion.

*Whitman & Wood,* for appellant.

I. Respondent was guilty of contributory negligence as shown by his evidence in chief, therefore he cannot recover. (*Fleming* v. *W. P. R. R. Co.* 49 Cal. 253; *Moore* v. *Cent. R. P. Co.,* 4 Zab. 268; *Terre Haute R. R. Co.* v. *Graham,* 46 Ind. 239; *Toledo R. R. Co.* v. *Shawckman,* 50 Id. 42; *Finlayson* v. *R. R. Co.,* 1 Dill. 579; *Evansville R. R.* v. *Lowdermilk,* 15 Ind. 120; *Hearne* v. *S. P. R. R. Co.,* 50 Cal. 482; *Delaney* v. *M. & S. R. W. Co.,* 33 Wis. 67; *Artz* v. *C. R. I. & P. R. Co.,* 38 Iowa, 293; *Nicholson* v. *Erie R. Co.,* 41 N. Y. 525; *Elwood* v. *N. Y. Cent. & H. R. R. Co.,* 4 Hun. 808; *Langhoff* v. *M. P. R. Co.,* 23 Wis. 43; *Deville* v. *S. P. R. Co.,* 50 Cal. 383; *Roth* v. *M. & S. R. Co.,* 21 Wis. 256; *Lewis* v. *B. & O. R. Co.,* 38 Md. 588; *P. & C. R. Co.* v. *Andrews,* 39 Md. 329; *Haight* v. *N. Y. C. R. Co.,* 7 Lan. 11; *Gonzales* v. *N. Y. & H. R. R. Co.,* 38 N. Y. 440; *Wilcox* v. *R. W. & O. R. Co.,* 39 N. Y. 359; *M. & E. R. Co* v. *Haslan,* 33 N. J. (Law), 147; *Johnson* v. *Tillson,* 36 Iowa, 89; *North Penn. Co.* v. *Heileman,* 49 Penn. St. 60; *Patterson* v. *B. & M. R. Co.,* 38 Iowa, 279; *Runyon* v. *N. J. C. R. Co.,* 1 Dutcher. N. J. 556; *Brown* v. *E. R. Co.,* 58 Me. 384; *Stubley* v. *N. W. R. W. Co.,* 1 Exch. (Law Rep.) 13; *Skelton* v. *L. & N. W. R. Co.,* 2 C. P. (L. R.) 635; *Warner* v. *N. Y. Cent. R. Co.,* 44 N. Y. 495; *B. R. Co.* v. *Hunter,* 33 Ind. 335; *Wilds* v. *H. R. R. Co.,* 29 N. Y. 315, 327; *Steves* v. *O. R. Co.,* 18 N. Y. 422; *Mackay* v. *N. Y. Cent. R. Co.,* 27 Barb. 528; *Butterfield* v. *West. R. Co.,* 10 Allen, 532; *Telfer* v. *North. R. Co.,* 1 Vroom. 187; *Brooke* v. *Buffalo R. Co.,* 27 Barb. 532, note; *Dascomb* v. *Same,* Id. 221; *Beiseigel* v. *N. Y. Cent. R. Co.,* 40 N. Y. 9; *Allyn* v. *Boston R. Co.,* 105 Mass. 77; *Hewett* v. *N. Y. Cent. R. Co.,* 3 Lan. 83; *Simpson* v.

*Keokuk,* 34 Iowa, 568; *Hinckley* v. *Cape Cod R.,* 120 Mass. 257; Shearman & Redfield, on Negligence, 3d ed. 577, secs. 11, 12, 33, 34; *Baltimore & Potomac R. R. Co.* v. *Jones,* Central Law Journal, vol. 6, p. 45; *Cleveland C. & R. Co.* v. *Elliott,* 28 Ohio St. 340; *Chicago, Rock Island R. R. Co.* v. *Houston,* Central Law Journal, vol. 6, 132; *Penn. R. Co.* v. *Beale,* 73 Pa. St. 509; *Phila. R.* v. *Hummel,* 44 Pa. St. 375; *Fox* v. *Town of Glastenbury,* 29 Conn. 209; *Herring* v. *Wil. & R. R.,* 10 Ired. 402; *Grippen* v. *N. Y. Cent. R.,* 40 N. Y. 47; Pierce Am. R. R. Law, 272–278; *Evansville R.* v. *Hiatt,* 17 Ind. 102; *Catawissa R. R. Co.* v. *Armstrong,* 49 Pa. St. 186; *Benton* v. *Cent. R. of Iowa,* 42 Iowa, 192; *Jeffersonville etc. R.* v. *Goldsmith,* 47 Ind. 43.)

II. The question whether a party has been negligent in a particular case, is one of mingled law and fact; when the facts are clearly settled and the course which common prudence dictates can be clearly discerned, the court should decide the case as matter of law. The court refused so to decide, therefore erred in refusing a nonsuit. (Shearman & Redfield on Negligence, 3d ed. sec. 11; *Stubley* v. *Northwestern R. R. Co.,* Exch. 13 (Law Rep.); *Pittsburg etc. R. R. Co.* v. *McClurg,* 56 Penn. St. 294; *Brown* v. *European R. Co.,* 58 Me. 384; *Delaney* v. *Milwaukee etc. R. R. Co.,* 33 Wis. 67; *Toomey* v. *The London etc. R. R. Co.,* 3 C. B. N. S. 146; *Mellors* v. *Shaw,* 1 Best. & S. 437; *Ryder* v. *Wombwell,* 4 Exch. 39 (Law Rep.); *Bridges* v. *The N. London R. Co.,* 6 Q. B. 377 (Law Rep.); *Siner* v. *Great Western R. Co.,* 4 Exch. 117 (Law Rep.); *Fleming* v. *W. P. R. R. Co.,* 49 Cal. 253; *Butterfield* v. *W. R. Co.,* 10 Allen, 532.)

· III. The court erred in not granting a new trial, as the vast preponderance of the evidence was in defendant's favor: *Seibert* v. *Erie R. R. Co.,* 49 Barb. 583; *Swearingen* v. *Birch,* 4 Yeates, Pa. 322; *Lockwood* v. *Atlantic Ins. Co.,* 47 Mo. 50; *Dewey* v. *Chicago R. R. Co.,* 31 Iowa, 373; *State* v. *Yellow Jacket S. M. Co.,* 5 Nev. 422; *Sherman* v. *Mitchell,* 46 Cal. 576; *Gilligan* v. *N. Y. etc. R. R. Co.,* 1 E. D. Smith, 453; *Tread-way* v. *Wilder,* 9 Nev. 67.) The court should consider this case as an exception to the general rule against interference with the judgment of the lower court on the evidence, and

hold that there is no substantial, nor any evidence, to sustain the verdict of the jury, and the action of the district judge. (*Carlin* v. *Chicago etc. R. R. Co.*, 37 Iowa, 316; *Dickey* v. *Davis*, 39 Cal. 565; *Howard Ex. Co.* v. *Wild*, 64 Pa. St. 201; *Toledo etc. R. R. Co.* v. *Shanckman*, 50 Ind. 49.) We are willing to accept the rule as held in this state, and most strongly stated in *State of Nevada* v. *Yellow Jacket S. M. Co.*, 5 Nev. 420, though we prefer that of *State* v. *C. P. R. R. Co.*, 10 Nev. 48, and in *Longabaugh V. & P. R. R. Co.*, 9 Nev. 302.

IV. The damages in this case were estimated upon no known rule, and were excessive, therefore the verdict should be set aside. (*Chicago R. R. Co.* v. *Jackson*, 55 Ill. 492; *L. & N. R. R.* v. *Fox*, 11 Bush, 495; *Goodno* v. *Oskosk*, 28 Wis. 300; *Paulmier* v. *Erie R. R. Co.*, 34 N. J. (Law Rep.) 151; *Ellsworth* v. *Cent. R. R. Co.*, 34 N. J. (Law Rep.) 93; *Rowley* v. *London & U. U. R. Co.*, 8 Exch. 230 (Law Rep.); *Quigley* v. *C. P. R. R. Co.*, 11 Nev. 351; *Malone* v. *Hawley*, 46 Cal. 409.

V. The instructions to the jury were erroneous, and calculated to mislead the jury.

*C. H. Belknap* and *Kirkpatrick & Stephens*, for Respondent.

I. It is admitted that E street is a public street of the city of Virginia. Solen, therefore, had a right to walk upon the railroad track. The defendant, in operating its railroad at the point where Solen was injured, was bound to use ordinary care. (Sherman & Redfield on Negligence, sec. 491; *Fettritich* v. *Dickinson*, 22 How. Pr. 249; *Shea* v. *Potrero & B. V. R. R. Co.*, 44 Cal. 414; *Flash* v. *Third Ave. R. R. Co.*, 1 Daley, 148; *Wilbrand* v. *Eighth Ave. R. R. Co.*, 3 Bos. 314; *Cook* v. *N. Y. Floating Dry Dock Co.*, 1 Hilt. 436; *Kan. Pacific R. R. Co.* v. *Pointer*, 9 Kan. 620; *Cent. R. R. Co.* v. *Dixon*, 42 Geo. 327; *Grippen* v. *N. Y. Cent.*, 40 N. Y. 42; *Bradley* v. *B. & M. R. R. Co.*, 2 Cush. 539; *Robinson* v. *W. P. R. R. Co.*, 48 Cal. 409.

II. The question as to what is ordinary care is a question of fact, depending upon the circumstances of each particular case. No general rule can be laid down upon the sub-

ject, but each case must turn upon its own peculiar facts. (Shearman & Redfield on Negligence, sec. 488; 1 Dillon, C. C. Rep. 581.)

III. A nonsuit should not have been granted by the court, if there was any evidence tending to prove that plaintiff was not himself guilty of contributory negligence. (*Richmond et al.* v. *Sacramento R. R. Co.*, 18 Cal. 351; *Wheelock* v. *B. & A. R. R. Co.*, 105 Mass. 206; *United States* v. *Taylor*, 5 McLean, 242; *Baxter* v. *Second Av. R.R. Co.*, 30 How. Pr. 219; *Hanover R. R. Co.* v. *Coyle*, 55 Pa. St. 396; *Sheirhold* v. *N. B. & M. B. R. R. Co.*, 40 Cal. 453; *Hackford* v. *N. Y. Cent. & Hud. R. R. Co.*, 43 How. Pr. 222; 53 N. Y. 645; *Pa. R. R. Co.* v. *Ogier*, 35 Pa. St. 60; *Wilcox* v. *Rome, Watertown & Og. R. R. Co.*, 39 N. Y. 361.)

IV. The rule of law which forbids a plaintiff to recover, whose own conduct has contributed to the injury sustained, is founded upon public policy. The law requires every man to take a reasonable care of himself. The doctrine of contributory negligence applies only in those cases where the act of the plaintiff has, to some extent, directly contributed to the injury sustained. (*B. & O. R. R. Co.* v. *Trainor*, 33 Md. 542; *Trow* v. *Vermont Cent. R. R. Co.*, 24 Vt. 494; *Wakefield* v. *C. & P. R. R. Co.*, 37 Id. 330; Wharton on Negligence, sec. 388; *Chaffee* v. *B. & L. R. R. Corp.*, 104 Mass. 115; 55 Mo. 23; 19 Conn. 566; 26 Id. 591; 60 Mo. 323, 475; 43 Id. 380; 59 Id. 223; 45 Id. 255.

V. Under the statute to authorize the granting of a new trial, damages must not only be excessive, but must appear to have been given under the influence of passion or prejudice. There is no fixed rule to govern the amount of damages which a jury may award in a case of this nature. The whole subject is left to the good sense of the jury, and with its verdict neither the trial judge nor the appellate court will interfere, except in a clear case. (*P. R. R. Co.* v. *Allen*, 53 Pa. St. 276; Sedgwick on Dam. 764.) If the proper amount of damages to which Solen was entitled is to be determined by comparison, then we insist the verdict must stand. (*Caldwell* v. *N. J. Steamboat Co.*, 56 Barb. 426; *Boyce* v. *Cal. Stage Co.*, 25 Cal. 460; *Worster* v. *Props. of*

*Canal Bridge,* 16 Pick. 547; *Shaw* v. *B. & W. R. R. Co.,* 8 Gray, 45; *Choppin* v. *N. O. & C. R. R. Co.,* 17 La. An. 19; *Robinson* v. *W. P. R. R. Co.,* 48 Cal. 409.) In a few English cases an attempt has been made to establish such a measure of damages as will give the injured party an annuity commensurate with the income derived by his own efforts before the injury, and which the injury has prevented him from further obtaining. No such rule has obtained in this country; but if such a rule were to be established here, then we maintain that the amount given by the verdict is not disproportionate to the income Solen derived from his work as a miner.

*S. W. Sanderson,* for Appellant on rehearing.

I. The motion for a nonsuit ought to have been granted. The charge of negligence, on the part of defendant, is grounded solely upon its omission to ring the bell or sound the whistle. The defendant was under no statutory or common law obligation to do either, because:

1. The statute which requires a railroad company to ring a bell or sound a whistle on approaching a highway-crossing is for the benefit of persons traveling on such highway, and who may be approaching the crossing and about to cross the railroad; and hence a person who is injured by the engine while walking along the track of the railroad, cannot recover upon the ground that his injury was caused by the failure of the company to comply with the statute. (*O'Donnell* v. *P. & W. R. R. Co.,* 6 R. I. 211; *Holmes* v. *The Central &c. R. R. Co.,* 37 Ga. 596.) The plaintiff, in this case, was not approaching or upon a crossing. He was walking along and upon the railroad.

2. The common law did not require the defendant to ring the bell or sound the whistle, because E street, at the place in question, and at the time in question, whatever it may have been formally in fact, or according to the map or plan of Virginia city, was not there and then a public street or highway, but was in fact a part of the yard and depot grounds of the defendant. The fact that foot-passengers were allowed to pass and repass along the track without ob-

jection from defendants, did not convert the defendant's yard into a public way, or entitle them to the benefits of bell or whistle. (*Illinois Cent. R. R. Co.* v. *Godfrey*, 71 Ill. 500; 22 Am. R. 112; *Sweeney* v. *Old Colony etc. R. R. Co.*, 10 Allen, 372–3; *Phil. & Read R. R. Co.* v. *Hummell*, 44 Pa. St. 375; *Gillis* v. *Penn. R. R. Co.*, 59 Id. 129.) This is not a case where the parties were in their places of equal right. The plaintiff was not in the exercise of a legal right; the defendant was. At best, the plaintiff was merely enjoying a privilege or favor granted by defendant without compensation or benefit. Where such are the conditions, the plaintiff must show extraordinary care before he can complain of the defendants. The plaintiff was negligent, and his negligence contributed proximately to the injuries which he sustained. (Counsel here cites the authorities reviewed in the opinion of the court on rehearing.) The plaintiff made a case of negligence in law. The court ought to have so declared upon the rule stated by Wharton in his work on Negligence, sec. 420. (*Lewis* v. *Balt. & Ohio R. R. Co.*, 38 Md. 588; 17 Am. R. 521; *Fleming* v. *Western etc. R. R. Co.*, 49 Cal. 253; *Keller* v. *N. Y. Cent. R. R. Co.*, 24 How. Pr. 172; *Pittsburg etc. R. Co.* v. *McClurg*, 56 Penn. St. 300; *Toledo & Wab. R. R. Co.* v. *Goddard*, 25 Ind. 194; *Harlan* v. *St. L. & C. R. R. Co.*, 65 Mo. 22; *Chicago R. I. & C. R. R.* v. *Houston*, Cent. L. J., vol. 6, p. 132.)

II. The court below erred in not granting a new trial. The instructions, as a whole, might not mislead a lawyer, but were liable to confuse and mislead a juryman. The court erred in instructing the jury to take into consideration the known and ordinary disposition of men to guard themselves against danger. (*Gay* v. *Winter*, 34 Cal. 153.) The court erred in instructing the jury as to the measure of damages. (Sherman & Redfield on Negligence, sec. 606; *Heil* v. *Glanding*, 42 Pa. St. 493.) The plaintiff was entitled to just compensation, and nothing more. This is not a case for exemplary damages, there being no evidence of willful or intentional wrong. (S. & R. on Negligence, sec. 600; *Moody* v. *McDonald*, 4 Cal. 297; *Hagan* v. *P. & W. R. Co.*, 3 R. I. 88; Sedgwick on Damages, 5 ed. 532.)

By the Court, HAWLEY, C. J.:

The plaintiff, William Solen, while walking along the track of the Virginia and Truckee railroad company was knocked down and run over by the tender of defendant's engine. His collar bone and one or two of his ribs were broken, and one of his feet so badly crushed as to require immediate amputation. He brought this suit to recover forty thousand dollars damages for the injuries thus received. The jury awarded him fifteen thousand dollars. The defendant moved for a new trial, which was refused. This appeal is taken from the order of the district court refusing a new trial and from the judgment.

1. When plaintiff rested his case the defendant moved for a nonsuit upon the following grounds: First. There is no sufficient evidence to entitle the plaintiff to go to the jury; Second. There is no showing of any such negligence on the part of defendant as would entitle plaintiff to recover; Third. The evidence fully shows that the negligence of the plaintiff contributed to the accident.

Appellant claims that the court erred in refusing to grant this motion.

It is conceded by counsel that a nonsuit should not have been granted unless upon the plaintiff's own showing it clearly appears that he was guilty of contributory negligence.

The plaintiff had resided in Virginia city for nearly two years, and was engaged as a laborer in the North Consolidated Virginia mine. On the morning of the twenty-fifth of February, 1876, he came off his shift at seven o'clock, and started for his boarding house on his regular route from the Ophir works, along the railroad track of defendant on E street. There was a very heavy snow-storm blowing in his face. While traveling along the main track he was knocked down by defendant's locomotive, or tender, backing north at a point near the crossing of Sutton avenue.

The plaintiff testifies as follows: "I took all possible care that could be possibly taken; was listening as much as possible, and watching ahead at times when I could; I did

not see the engine before it struck me; heard no signal; was not warned by anybody; heard no steam whistle and there was no bell ringing ; the wind was blowing from the south, parallel with E street and the track; the storm was heavy, and I could not tell   *   *   how far I could see ahead of me through the storm; but at times, probably say ten feet, and at other times I couldn't see hardly any distance at all; it came in gusts, kind of blinded me so that I couldn't see any distance whatever ; I do not know how many tracks there were on E street, between Union street and the Ophir trestle, but my impression is there were four; the street was mostly occupied by tracks at this point; I was walking on the main track, the second from the freight depot; I don't know what distance there was between the tracks; the ground between them was partly broken and rough ground in places, and all covered over level with snow ; between the rails it was level and pretty smooth; there were large piles of heavy lumber outside the track, and no sidewalks or passage-way provided along the street; E street is a much frequented street, and at that time foot-passengers were in the habit of traveling along it as their business required them ;   *   *   the men employed in the Consolidated Virginia, California and Ophir mines, were in the habit of passing along the street and railroad track going to their work and homes; there was probably from four to six inches of snow on the track at the time of the accident, which deadened all sound of engine or train on the track ; I heard no sound of the engine, nor of the bell or whistle ; if either had been sounding I could have heard it, for the reason that the wind was blowing directly to my ear."

Plaintiff had passed over the track for a year, and knew that it was used for running cars back and forward and for moving track engines, tenders, freight and passenger cars. Upon cross-examination, in reply to the question, "Could you have helped seeing it (the engine) if you had been looking that way?" he answered: "I cannot say," and added: "I don't know that I was taking all possible care in walking on the track at all; but suppose one has got to walk there

when he has got no other place to walk. There were four tracks and a space between the tracks, but I could not say with what safety a man could walk there. I suppose in a clear day one might walk there if he could see exactly where it was marked. I was walking between the rails because it was my habit. I supposed I had a right to do so, and it was better traveling." Further on he says: "I thought I was rather in a dangerous place, but I expected as the storm was blowing as hard as it was, being a stormy morning, and they being in the habit of giving signals if there was an approaching train; I took all possible care looking ahead.    *    *    At times I could see ten feet, and at other times I could not see at all.    *    *    I say there was no bell ringing for the simple reason I didn't hear any. The wind was blowing my way from the south, and if a bell had been ringing I should have heard it."

Charles McDermott testified in plaintiff's behalf as follows: "I was brakeman on the locomotive J. W. Bowker, and was on it at the time of the accident. Immediately preceding the accident the engine was standing still and commenced to back twenty-five or thirty paces from where we run over Solen. With me on the engine were Thomas Martin, engineer; James Boyd, brakeman, and John Monohan, fireman.    *    *    When the engine started Thomas Martin was in his place on the right-hand seat of the cab. Monohan was in the tender piling wood. James Boyd was sitting in the cab on the opposite side of the engine. I was standing partly with one foot on the tender and one foot on the engine, with my hands up against the cab. From the time the engine started until it stopped, after running over Solen, there was no signal given that I knew of. The bell was not ringing. I did not hear it ring. None of the parties in the engine rung the bell.    *    *    I was six or seven feet from the bell-rope. There was no look-out in the direction the engine was moving that I know of. I didn't see Solen until we struck him and run over him. There was no passage-way around the west of the freight depot except by going around the platform, which is two or three feet high, and there is no chance for one coming from

the direction of the Ophir to walk on the platform except by climbing on it. He would have to climb about three feet. I suppose if the bell had been ringing at the time of the accident that Solen would have heard it when he got within three or four feet. We were running very slow—not to exceed four miles an hour. E street was at that time, and before that time, a much frequented street by passengers, miners going to and from work at all hours of the day and night; great numbers passing along every day walking upon the track—walking every place, in fact."

This witness was subjected to a rigid cross-examination. He adhered to his statement that he did not ring the bell, and persistently denied that the engineer ordered him to ring it, and also denied that he said to Solen at the time of the accident, " D—n it, man, I was ringing the bell myself." In the light of this testimony we do not think the court erred in refusing to grant a nonsuit.

The plaintiff was bound to use ordinary care and prudence and to use his ordinary faculties in protecting himself from danger, and if the evidence shows beyond controversy that he failed to use his eyes or ears, having the opportunity and ability to do so, then the court, under the rule laid down by many of the authorities cited by appellant's counsel, would have been justified in granting a nonsuit upon the ground that the plaintiff was guilty of contributory negligence. But none of the decisions go to the extent that if the plaintiff did not use both his eyes and ears he would necessarily be guilty of contributory negligence.

A traveler walking along a railroad track upon a public street is bound to use reasonable care and prudence. If he can see, he is bound to look; if he can hear, he is bound to listen; ordinarily, he is required to both look and listen. But if, without his fault, he is for the time being deprived of making full use of his eyes, and he is at a place where he can hear the ringing of a bell or the sounding of a whistle, and it is at a place where it is the usual custom, as well as the requirement of the law, for the railroad company to ring its bell or blow its whistle, and he does listen, then he would not be guilty of negligence, from the simple fact that

without any fault on his part, he was for the time being deprived of the sense of sight to such an extent that he could not see the approach of a locomotive.

In *Flemming* v. *The Western Pacific Railroad Company,* the plaintiff, in driving a four-horse team over the crossing of the railroad, was, owing to the atmosphere being completely filled with dust, prevented from seeing but a few feet from him, and owing to the noise of his wagon, could not hear the approaching train. He did not stop to listen, and while attempting to cross the track was injured. He was held guilty of contributory negligence, because " as the plaintiff could not use his eyes with effect, it was incumbent on him, as a person of ordinary prudence, to make the best use of his ears, which he could not do while his team was in motion." (49 Cal. 257.)

The same principle was declared in *Benton* v. *The Central Railroad of Iowa,* where the court held the plaintiff guilty of contributory negligence, because he "neither looked nor listened, but thoughtlessly drove into the danger." The court said: "It may have been that the immediate noise of his wagon prevented him from hearing. If this was so, he should have stopped his team and listened." If the plaintiff had listened he would "have heard the train in time to have avoided the injury." (42 Iowa, 195.)

In Shearman and Redfield on Negligence, the general rule, with its exceptions is thus stated: "It is universally deemed culpable negligence for any one to cross the track of a railroad operated by steam power in full view or hearing of an approaching train, or without taking any precautions, if any are reasonably within his power, to ascertain whether a train is approaching; and as a general but not invariable rule, it is such negligence to cross without looking in every direction that the rails run, to make sure that the road is clear. But in all the cases where this rule has been enforced, the circumstances made it reasonable, as the most natural and reasonable way of ascertaining that there was no danger. Where, however, the injured party had other satisfactory evidence that it was safe for him to proceed, it has been held that he was not absolutely bound to

look up or down the track. If the track is so obstructed that the traveler cannot see along it, it may be sufficient for him to listen for the approach of a train. If he both looks and listens, no more can be expected of him." (Sec. 488.)

It is shown by plaintiff's testimony that it was the usual custom of the defendant, when moving its locomotives and trains along the track where plaintiff was injured, to ring its bell or blow its whistle.

This testimony is, in fact, materially strengthened by the evidence offered upon the part of defendant. The engineer of defendant's locomotive, J. W. Bowker, upon his cross-examination, testified as follows: " It is generally the duty of any one who is near to ring the bell—fireman, engineer or brakeman. There is no person designated to ring the bell. It is everybody's duty who is near the bell. It is the duty of the engineer to see that the bell is rung, and it is the duty of the fireman to ring it. It is the duty of all employees on an engine to take all necessary precautions. If they are near the rope they are to ring the bell."

It is admitted that the place where the injury occurred was within eighty rods of a crossing, and, under the law of this state, the railroad company was required to ring its bell. (2 Compiled Laws, 3466.) But independent of the custom and the statute we are clearly of the opinion that it is the duty of a railroad company at all times, when moving its locomotives or trains through the public streets of a city, to give some signal of their approach. To move its locomotives or cars through the streets at night, or on dark, stormy and windy days, without giving any signal, would be gross negligence.

Woodruff, J., in *Grippen* v. *New York Central Railroad Co.*, speaking of the legal duty, which rests upon railroad companies to run their engines and cars carefully, prudently, with a caution proportioned to their power of injury and governed by a due regard for the time and place, and other circumstances affecting the liability of third parties to receive injuries, says: "This high measure of duty on the part of the railroad company, the statute, prescribing notices by sign-boards at road or street crossings, the ring-

ing of the bell or the blowing of the whistle, has not relaxed in any degree. As a rule of duty it stands as stringent and inflexible, founded in common law and the plainest right, as if there were no such statute. Compliance with the statute, is, of course, one of the circumstances, under which they run their trains; and, incidentally, such compliance may make it consistent with due care and caution, to do what, without using such signals, would, even if there were no such statutes, be negligence. But the rule stands and the statute stands with it; both must be satisfied. And hence, it is properly said, the statute does not constitute the sole rule of duty. The common law still requires the exercise of care and prudence in the running of their ponderous engines and heavy trains through an inhabited country; and that care and prudence increases in degree, as they enter towns, villages and cities and cross their thoroughfares." (40 N. Y. 42.)

Under all the circumstances of this case we are unwilling to say, as a question of law, that the plaintiff, as a reasonable, careful and prudent man, had no right to assume or to act upon the belief that the defendant would not move its locomotive or cars without giving the usual signals.

It has been frequently decided that a railroad company, in the conduct and management of its engines and trains, has the right to act upon the assumption that a traveler in walking upon or driving across its track will use due care and prudence to avoid impending danger. In *Philadelphia and Reading Railroad Co.* v. *Hummell*, in defining the care and duty of a railroad company, the court say: "Ordinary care they must be held to, but they have a right to presume and act on the presumption that those in the vicinity will not violate the laws. * * Precaution is a duty only so far as there is reason for apprehension. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act. It is true that what amounts to ordinary care under the circumstances of a case is generally to be determined by the jury. Yet a jury cannot hold parties to a higher standard of care than the law requires, and they cannot find anything negligent which is

less than a failure to discharge a legal duty. If the law declares, as it does, that there is no duty resting upon any person to anticipate wrongful acts in others, and to take precautions against such acts, then the jury cannot say that a failure to take such precautions is a failure in duty and negligence." (44 Pa. St. 379.)

In *Finlayson* v. *Railroad Company*, Justice Miller instructed the jury that the agents of the railroad company had the right to suppose that a man seen walking upon the railroad track in front of a moving train of cars was a man of sound mind, and that he would take reasonable care to protect himself in case of danger. (1 Dillon C. C. 582.)

The same general principles have been often applied in favor of persons who have been injured in attempting to cross over or walk upon a railroad track. In *Newson* v. *The New York Central Railroad Company*, the court declare that "the law will never hold it imprudent in any one to act upon the presumption that another in his conduct will act in accordance with the rights and duties of both." (29 N. Y. 390.)

Porter, J., in delivering the opinion of the court in *Ernst* v. *Hudson River Railroad Company*, 35 N. Y. 9, discusses this question at great length. After referring to the statute which requires a railroad company to ring its bell for a distance of eighty rods before passing a crossing, and declaring that a railroad is responsible in damages for any accident that might occur by reason of its neglect, unless the plaintiff had been guilty of a breach of duty which contributed to the injury, said: "The plaintiff is not guilty of such breach of duty when he assumes, in the absence of any indication to the contrary, that the company obeys the law, and that no engine is advancing to the crossing within a distance of eighty rods without public signals of its approach. If he is deceived by the unlawful omission of the signals, the wrong is not his, but theirs."

Justice Miller, in *Wilcox* v. *The Rome, Watertown and Ogdensburg Railroad Company*, 39 N. Y. 358, questioned the correctness of the views expressed in *Ernst* v. *Hudson River Railroad Company*, *supra*, and it may with safety be said,

without referring to the authorities, that there is a singular lack of uniformity in the subsequent decisions of the court of appeals of New York upon this question.

In *Robinson* v. *The Western Pacific Railroad Company*, the court said: "Nor should the fact that the plaintiff was on the track—disconnected from the other circumstances—be considered as proving negligence. * * * The plaintiff here was exercising an undoubted right, and she was authorized to assume that all other persons using the street would act with due care. It cannot be imputed as negligence that she did not anticipate culpable negligence on the part of the defendant. * * * She could properly act on the presumption that the employees of the defendant would use the degree of care which persons of ordinary prudence are accustomed to employ under the same or similar circumstances, due regard being had for the rights of others. (48 Cal. 421.)

In *Kennayde* v. *Pacific Railroad Company*, the court decide that a citizen upon the public highway, in approaching a railway track, when he can neither see nor hear any indication of a moving train, is not chargeable with negligence for assuming that there is no car sufficiently near to make the crossing dangerous. "He has a right to assume that in handling their cars the railroad companies will act with appropriate care," and "that the usual signals of approach will be seasonably given." (45 Mo. 262.) This decision was affirmed, all the justices concurring, in *Taber* v. *Missouri Valley Railroad Company*, 46 Mo. 353.

The rule of law upon this subject is very clearly and, in our judgment, correctly stated in Shearman & Redfield on Negligence, sec. 31, as follows: "As there is a natural presumption that every one will act with due care, it cannot be imputed to the plaintiff as negligence that he did not anticipate culpable negligence on the part of the defendant. He has a right to assume that every one else will obey the law, and to act upon that belief. Nor even where the plaintiff sees that the defendant has been negligent, is he bound to anticipate all the perils to which he may *possibly* be exposed by such negligence, or to refrain absolutely

from pursuing his usual course on account of risks to which he is *probably* exposed by the defendant's fault. Some risks are taken by the most prudent men; and the plaintiff is not debarred from recovery for his injury, if he has adopted the course which most prudent men would take under similar circumstances."

But the right to assume that the railroad company would properly perform its duty does not shield the plaintiff from the exercise of ordinary care and prudence on his part. The fact that the locomotive and tender of defendant was being carelessly and negligently moved backwards, without any signal being given of its approach, does not, of itself, authorize plaintiff to recover damages. If plaintiff, notwithstanding the negligence of the railroad company, recklessly exposed himself to danger, and it appears that the injury complained of would not have occurred but for his own misconduct or negligence, he cannot recover damages, but must bear the consequences of his own folly.

When the plaintiff rested his case, the proof was uncontradicted that the bell was not rung, and that no signal of any kind was given. A *prima facie* case of negligence upon the part of the defendant was clearly established.

The remaining question is whether the injury complained of was caused solely by the negligence or improper conduct of the defendant's employees, or whether the plaintiff so far contributed to the injury by his own negligence or want of ordinary care and prudence that, but for such negligence or want of care and caution, the injury would not have happened. (*Lewis* v. *Baltimore and Ohio Railroad Company*, 38 Md. 589; *Baltimore and Potomac Railroad Company* v. *Jones*, published in The Reporter, vol. v, No. 5.)

Did the plaintiff exercise proper care, or was it an act of negligence upon his part to take the chances of walking along the railroad track at a time when he knew that owing to the snow upon the rails, both sound and sensation of motion, ordinarily produced by an approaching train, was deadened, if not entirely destroyed, and that owing to the severe gusts of wind and the falling snow, he could not see more than fifteen or twenty feet in front of him, and was

liable at any moment to be deprived from seeing any distance at all? The plaintiff testified that he knew he was in some danger, but he knew that he was in a position where he could hear the bells; that he knew it to be the usual custom of defendant to either ring its bell or sound its whistle, and that he was carefully listening for the usual signal of an approaching engine, and looking ahead at all times, except when momentarily deprived of sight by the severe gusts of wind.

Having the right to walk upon the track, the plaintiff was only required to do what a reasonable and prudent person would ordinarily have done under the same or similar circumstances.

We are of opinion that it would have been clearly erroneous for the district judge to have decided as a question of law, under all the facts and circumstances of this case, that plaintiff was guilty of negligence. It was a question for the jury to decide. It addressed itself to each individual juror: Would you, as a reasonable man, in the exercise of ordinary care and prudence, have acted as the plaintiff did on the morning in question? "Negligence, as I understand it," says Cooley, C. J., in delivering the opinion of the court in *Detroit and Milwaukee Railroad Company* v. *Van Steinburg*, 17 Mich. 99, "consists in a want of that reasonable care which would be exercised by a person of ordinary prudence under all the existing circumstances, in view of the probable danger of injury. The injury is, therefore, one which must take into consideration all these circumstances, and it must measure the prudence of the party's conduct by a standard of behavior likely to have been adopted by other persons of common prudence. Moreover, if the danger depends at all upon the action of any other person, under a given set of circumstances, the prudence of the party injured must be estimated, in view of what he had a right to expect from such other person, and he is not to be considered blamable if the injury has resulted from the action of another, which he could not reasonably have anticipated. Thus the problem is complicated by the necessity of taking into account the two sets of circumstances affecting the conduct of differ-

ent persons, and is only to be satisfactorily solved by the jury placing themselves in the position of the injured person, and examining those circumstances as they then presented themselves to him, and from that standpoint judging whether he was guilty of negligence or not. It is evident that such a problem cannot usually be one upon which the law can pronounce a definite sentence, and that it must be left to the sifting and determination of a jury."

If, therefore, the question of negligence arises upon a state of facts in regard to which reasonable men might honestly differ, it ought to be submitted to the jury. Whenever there is any doubt or uncertainty the question becomes one of fact, and must be left to the unbiased judgment of a jury of twelve impartial men.

There are, of course, many decided cases which hold that when the facts, showing the want of ordinary care on the part of the plaintiff, are clear and undisputed, the question of negligence is one of law, to be decided by the court; such, for instance, as driving recklessly upon the railroad track, at a crossing, after being informed that the cars are coming (*Mackey* v. *New York Central Railroad Co.*, 27 Barb. 528); where the cars are in plain view of persons upon the track, and the plaintiff, with a bag of shorts upon his shoulder, that obstructs his view and prevents his hearing, undertakes to cross the track (*Rothe* v. *Milwaukee and St. Paul Railway Co.*, 21 Wis. 256); where the plaintiff could both have seen and heard the approaching train and neither looked nor listened. (*Bellefontaine Railway Co.* v. *Hunter*, 33 Ind. 336; *Wilcox* v. *Rome, Watertown and Ogdensburgh Railway Co.*, 39 N. Y. 358.) So where the plaintiff went upon the private right of way of a railroad company, where she had no right to be, and walked carelessly upon the track without looking or listening for an approaching train (*Chicago, Rock Island and Pacific Railroad Co.* v. *Houston*, published in the Reporter, vol. 5, No. 6, and many other cases of a kindred character). But nearly all the numerous authorities cited by the respective counsel admit—if the question is at all discussed—that if the evidence is doubtful, and the

inferences to be drawn from it questionable, it is for the jury to determine whether the act of plaintiff contributed to the injury.

In *Railroad Company* v. *Stout*, the supreme court of the United States say: "If a sane man voluntarily throws himself in contact with a passing engine, there being nothing to counteract the effect of this action, it may be ruled as a matter of law that the injury to him resulted from his own fault, and that no action can be sustained by him or his representatives. So, if a coach-driver intentionally drives within a few inches of a precipice, and an accident happens, negligence may be ruled as a question of law. On the other hand, if he had placed a suitable distance between his coach and the precipice, but by the breaking of a rein or an axle, which could not have been anticipated, an injury occurred, it might be ruled as a question of law that there was no negligence and no liability. But these are extreme cases. The range between them is almost infinite in variety and extent. It is in relation to these intermediate cases that the opposite rule prevails. Upon the facts proven in such cases, it is a matter of judgment and discretion, of sound inference, what is to be the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established from which one sensible impartial man would infer that proper care had not been used, and that negligence existed; another man, equally sensible and equally impartial, would infer that proper care had been used and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one

Vol. XIII.—9.

man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge." (17 Wall. 663.)

The following authorities, in addition to those already cited, fully sustain the action of the court in refusing to grant a nonsuit: *Richmond* v. *S. V. R. Co.*, 18 Cal. 351; *Schierhold* v. *N. B. and M. R. Co.*, 40 Id. 447; *Beers* v. *Housatonic R. Co.*, 19 Conn. 566; *D., L. and W. R.* v. *Toffey et al.*, 38 N. J. (Law), 525; *Hackford* v. *N. Y. C. and H. R. R. Co.*, 43 How. Pr. 222; *Bradley* v. *B. and M. R.*, 2 Cush. 539; *Chaffee* v. *B. and L. R. Corp.*, 104 Mass. 108; *Wheelock* v. *B. and A. R. Co.*, 105 Id. 203; *Gaynor* v. *Old Colony and Newport R. Co.*, 100 Id. 208; *F. and R. Branch R.*, 116 Id. 537; *Craig* v. *N. Y., N. H. and H. R. Co.*, 118 Id. 431; *Renwick* v. *N. Y. C. R. Co.*, 36 N. Y. 132; *Delafield* v. *U. F. Co.*, 5 Robt. 210; *Penn. R. Co.*, v. *Ogier*, 35 Penn. St. 72; *Maginnis* v. *N. Y. C. & H. R. R. Co.*, 52 N. Y. 215; *Penn. R. R. Co.* v. *Barnett*, 59 Penn. St. 259; *The Lehigh Valley R. R. Co.* v. *Hall*, 61 Penn. St. 361; *Webb* v. *P. & R. R. R. Co.*, 57 Me. 117; *Wyatt* v. *Citizens R. R. Co.*, 55 Mo. 485; *Smith* v. *Union R. R. Co.*, 61 Mo. 588.)

2. Did the court err in refusing to grant a new trial upon the ground that the verdict was against the weight of evidence?

From the view we entertain of this case it is unnecessary to follow counsel in their discussion of the question of fact whether plaintiff could have safely walked along E street in the vacant spaces between the tracks of the railroad. If he had the right to walk on the track, if he was at a place where he had the right to be, then the question whether it would have been safer for him to have been elsewhere, is immaterial.

It was shown upon the part of defendant that it had obtained from the city authorities permission to lay its tracks and run its locomotives and cars on said street, and it is claimed that it had thereby obtained the exclusive right to all that portion of the street covered by its tracks, and that plaintiff, in walking thereon, was a trespasser. Is this position correct? Is it true that any distinction exists, or ought

to exist, between railroads propelled by steam and street railroads propelled by horse-power? Does the mere fact that vehicles cannot be safely drawn along a steam railroad prohibit the use of the track by foot-travelers? We think not. In our judgment, Solen had the same right to pursue his regular route as defendant had to run its locomotives. "They each have a right," say the court in *Kennayde* v. *Pacific R. R. Co.*, *supra*, "to exercise their privileges in a lawful manner, and each are equally bound to use caution, care and diligence to avoid accidents. But, so far as this case is concerned, conceding that the resolutions of the board of aldermen, in granting the right of way to the railroad company, is valid (a question which we have not examined, and do not decide), it is not necessary to base our opinion solely upon this ground.

The testimony is undisputed that the general public were permitted to use the tracks as a public thoroughfare. The great body of the miners engaged at work upon three of the most important mines situate upon the Comstock lode have been accustomed for years, at all hours of the day and night, in storm and sunshine, to walk to and from their work on the railroad tracks. No testimony was offered upon the part of the defendant tending to show that such a use had been made of its tracks without its knowledge or consent. The testimony was of such a character as to authorize the inference of an implied license on the part of the railroad company—treating it as the owner of the land—to allow pedestrians to walk over and along its tracks.

In *Delaney* v. *The Milwaukee and St. Paul Railway Company*, it was argued that plaintiff was a trespasser, because the place where he was injured was not a highway crossing, but the private grounds of the railroad company. But the court held that, as applied to the evidence, the proposition was not correct. The evidence established the fact that there had been a practical crossing over the place where the plaintiff was injured, for a long time, with the knowledge of the agents of the company. It did not appear that the company ever forbade any one from going there, or took any steps to put an end to persons going upon its

grounds at that point. The court said: "These and other facts appearing in the case, show beyond controversy that the plaintiff was not wrongfully on the crossing where he was injured, and it is incorrect to view the relative duties of the parties upon any such assumption." (33 Wis. 71.)

In *Kansas Pacific Railway Company* v. *Pointer*, the facts were in many respects similar to this case. The court, in discussing this point, said: "The plaintiff had a right to show that the place where he was injured was on a public street of Leavenworth; and if he could not show that it was a public street in law, he still had the right to show that it was a public street in fact. And for this purpose, if for no other, he had a right to show that the public travel was on or over this ground, and to show that such travel was there with the knowledge and consent of the railway company. If he should show that the place where the injury occurred was on a public street, either in law or fact, he would not be such a trespasser as would relieve the railway company from exercising reasonable and ordinary care and diligence towards him. In fact, he would not be a trespasser at all. The railway company, in such a case, would be bound to run its trains with reference to him, and to every other person who might be rightfully occupying the street. Such persons would have the same right to be on the street as the railway company. In fact, in this case, the legal right of the railway company, and that of the public, to use the ground as a street, seems to be about equal. Both derive their right from a city ordinance. The public used this ground for a street, however, long before the railroad was built. If the plaintiff and the railway company each had a right to use said ground, then it was incumbent on each alike to use ordinary care and diligence to prevent and avoid injuries." (9 Kan. 628; see, also, Shearman & Redfield on Negligence, sec. 491.)

The testimony upon the part of the defendant tended to show that the bell was rung, and, hence, to establish the fact that defendant was not guilty of negligence.

Martin, the engineer of the defendant's locomotive, in his testimony says: That when the J. W. Bowker started from

the freight-house switch, "McDermott, the same who testified in this case, was sitting on the fireman's seat with his left hand holding the bell-rope. I said: 'D—n it, ring that bell;' and he rung the bell." He says, that "while Solen was lying between the tracks on his left side, McDermott, standing by the right side of him,   *   *   said to Solen: 'I was ringing the bell myself.' Solen said: 'Why didn't you ring your bell or blow your whistle,'   *   *   and McDermott said: 'D—n it, man, I rung the bell myself!'" James Boyd, a brakeman in the employ of defendant, testified to the same effect.

The conductor, John M. Duncan, in his testimony, says, that when he told the engineer to start: "McDermott was sitting on the fireman's seat. I think he had hold of the bell-rope, but I am not willing to swear whether he was ringing the bell or not." Upon cross-examination, in reply to the question: "Who rung the bell?" this witness said: "I cannot testify that I really heard the bell. I couldn't testify that I heard it ringing. I wouldn't be willing to testify that I did or did not hear it ringing." In reply to other questions he said: "The whistle didn't sound from the time we stopped at the freight-house. I am sure the whistle didn't sound."

William Hill, an employee of defendant, was standing on the corner of the platform at the freight depot, and after the engine commenced backing up he says that he asked a man by the name of Caldwell, who was then standing by him, if he could hear the bell, and he remarked he could not. "I says, 'They are ringing the bell,' and he said I saw him pulling the rope, but I couldn't hear the sound of the bell." This witness also corroborates Martin and Boyd, as to the remarks made by McDermott to Solen, that the bell was rung. There were some other points of minor importance in the testimony offered by defendant, tending to disprove portions of McDermott's testimony. Counsel for appellant claims that McDermott was successfully impeached; that the jury erred in finding a verdict so overwhelmingly against the testimony, and that the court erred in not setting the verdict aside.

We are not willing to accept the position, so earnestly contended for by appellant's counsel, that it was a physical impossibility for any man of ordinary sagacity to have been run over by a locomotive moving backward at the rate of four miles an hour; that plaintiff must have been recklessly and carelessly breasting the storm, utterly heedless of the impending danger, and that the mere fact that he was injured is enough to warrant this court in declaring him guilty of contributory negligence, notwithstanding the verdict of the jury, and the action of the district court refusing to set the verdict aside.

There was, in our judgment, a direct conflict of evidence upon the most material question of fact involved in this case.

As already mentioned, several of the witnesses for the defendant testified that McDermott rung the bell, and that he so stated the fact to be (to plaintiff) at the time of the injury. If the jurors believed this testimony to be true they ought not to have found a verdict against the defendant. But, on the other hand, it is to be observed that McDermott testified just as positively that he did not ring the bell, and that he did not make the remarks attributed to him at the time of the accident. His testimony is corroborated by the plaintiff, who, knowing that he was on the track of a railroad where engines and trains were hourly passing, that owing to the severe storm he could not see the approach of a locomotive, and realizing the fact that he was exposed to danger, was listening for the sound of the bell, and did not hear it. The plain inference to be drawn from the plaintiff's testimony if believed by the jury, was that the bell was not rung; that if it had been rung the plaintiff would have heard it, and the accident would not have occurred. Two of the defendant's witnesses, Martin and Boyd, who swore positively that the bell was rung, were themselves in fault if it was not rung, Martin being an engineer and Boyd a brakeman on the engine at the time of the accident. The corroborative evidence is not free from doubt and comes also from the employees of the company. The plaintiff is a man of sound mind, of ordinary intelligence and judgment,

and it cannot reasonably be presumed that he would have made a willing and wanton sacrifice of his life.   On the other hand, the presumption would seem to be irresistible that he would not have been injured if he had been notified, by the ringing of the bell, of the close proximity of the locomotive and tender.   But in any event, the conflict raised a question of fact which the plaintiff had the right to have determined by the jury.   (*Renwick* v. *N. Y. Cen. R. Co.*, 36 N. Y. 132; *Artz* v. *C., R. I. and P. R. Co.*, 44 Iowa, 284.)

If the district court, upon weighing all the evidence, entertained the opinion that the verdict was clearly against the great preponderance of evidence, it had the power, and it was its duty, to set the verdict aside.   This court, in *Phillpotts* v. *Blasdel*, declared that *nisi prius* courts had "jurisdiction on motion for a new trial, to decide, as a question of fact, whether the scale of evidence, which leans against the verdict, very strongly preponderates."   (8 Nev. 76.)   The district courts ought, however, always to use great caution in the exercise of this power, and they should be careful not to invade the legitimate province of the jury "when they have manifested a fair and intelligent consideration of the evidence submitted to them."   (*Dewey* v. *C. & N. W. R. Co.*, 31 Iowa, 373.)

But it is not the province of this court, as it is of the district court, to weigh the evidence in order to determine the preponderance thereof.   Our duty ends when it is discovered that there is ample evidence in the transcript sufficient to sustain and justify the district court and trial jury in the conclusions they have reached.   (*State of Nevada* v. *Yellow Jack-t S. M. Co.*, 5 Nev. 415; *Lewis* v. *Wilcox*, 6 Nev. 215; *Longabaugh* v. *V. & T. R. Co.*, 9 Nev. 302; *State of Nevada* v. *C. P. R. Co.*, 10 Nev. 49.)

The general rule upon this subject has been (as was said in *McCoy* v. *Bateman & Buel*, 8 Nev. 127) " so often reiterated as to become somewhat monotonous."

We have examined all the testimony set forth in the record, with the care which the importance in this case demands, and are unwilling to say that there is not sufficient legal evidence upon which the jury might reasonably con-

clude that the plaintiff did not, by any negligence on his part, contribute to the injuries he received, and that the accident which caused the injuries complained of occurred by reason of the negligence of defendant in not giving the usual and proper signal.

The testimony is contradictory and irreconcilable, and, following the rules heretofore announced by this court, a new trial upon this ground should not be awarded. We cannot invade the province of a jury. Every litigant, under our laws, has the legal right to have his case, upon questions of fact, submitted to and determined by a jury impartially selected from the citizens of the county, and some consideration must always be shown to the conclusions reached, otherwise the right of a trial by a jury would be but a farce and a delusion. Whether we would have arived at the same verdict it is impossible for us to tell. We cannot undertake to say which of the witnesses should be credited and which disbelieved, nor determine upon which side the weight of evidence preponderates. It was the duty of the jury and *nisi prius* court to determine these questions, and we are bound to presume that they have performed their duty with fidelity and with a conscientious desire to exact justice between the respective parties. Better opportunities were afforded them, by the presence of the witnesses, to judge correctly of their credibility and to determine therefrom as to the weight of the evidence than we can possibly obtain from reading the testimony. Surely, it requires no argument to establish this self-evident truth. Everybody knows that a clearer conception and better understanding of the testimony is always obtained from hearing it as it is delivered from the lips of a witness, and observing his demeanor while on the witness stand, than could ever be obtained by an examination of the testimony written out by a reporter at the trial. There is oftentimes more in the manner of a witness in giving his testimony than in the matter testified to that convinces the minds of the jury of the truth or falsity of his statement. The jury having decided the weight of evidence to be in favor of the plaintiff and the district court having approved

the verdict, we will not disturb their decision upon this question.

3. Is the verdict of the jury excessive? Does it appear from all the facts and circumstances of this case that the damages awarded by the jury are so excessive as to convince us that the verdict was "given under the influence of passion or prejudice?" (Compiled Laws, 1256, subdivision 5.) Is it manifest that the jury adopted any erroneous principle in arriving at the amount of the verdict? Is there anything to justify the assertion of appellant's counsel that the minds of the jurors must have been warped by sympathy for the plaintiff or controlled by enmity toward the defendant? We think these questions must all be answered in the negative. What are the facts? The plaintiff, thirty-four years of age and a miner by occupation, thus details the injuries he received: "I was thrown under the rails and dragged a little distance. I was injured by having a leg amputated and a collar bone broken. I think some of my ribs were broken.   *   *   *   I had very severe pains through my breast and sides. I was confined to my bed five or six weeks, and cannot now do any kind of hard work. My right shoulder is broken; it don't trouble me only at times when I go to lift anything heavy; can't handle anything. I can use it without much pain until I go to use it to lift something heavy. My right shoulder and arm are disabled and have been so ever since the accident. I cannot walk far without fatigue.   *   *   *   I have no means of making my living except by my personal labor."

For these injuries, resulting, as the jury found, from the negligence of the defendant, plaintiff was awarded fifteen thousand dollars.

The argument of appellant's counsel that the judgment should be confined to the simple question of plaintiff's avocation and the compensation limited or extended to a sum which would produce as great an income as he could have earned, by pursuing such avocation had he not been injured, ignores the right of the jury to award damages for the bodily suffering of plaintiff which all the authorities admit is proper to be considered by the jury in determin-

ing the amount of damages that plaintiff is entitled to recover.

There being no absolute, fixed, legal rule of compensation, appellate courts ought not to interfere with the verdict unless it clearly appears that there has been such a mistake of the principles upon which the damages were estimated, or some improper motive or bias indicating passion or prejudice upon the part of the jury. (*Worster* v. *Proprietors of Canal Bridge,* 16 Pick. 547; *Boyce* v. *Cal. Stage Co.,* 25 Cal. 461; *Schmidt* v. *M. and St. P. R. Co.,* 23 Wis. 195; *Klein* v. *Jewett,* 26 N. J. Eq. 480; *Penn. R. Co.* v. *Allen,* 53 Penn. St. 276; Segdwick on the Measure of Damages, 601, 602, and authorities there cited.)

The amount of the verdict—although perhaps greater than we would have given—is not, in our opinion, inconsistent with the exercise of an honest judgment upon the part of the jury whose special province it was to determine this question.

4. The instructions given by the court were certainly as favorable to the defendant as the law would warrant. We have repeatedly declared that the instructions must be read together and considered as a whole. When so read and considered with reference to the evidence, we are satisfied that the jury could not in this case have been misled to the defendant's prejudice. A verdict ought never to be set aside simply because some expressions of the court, in its charge to the jury, might in some particulars, when considered apart by themselves, be susceptible of verbal criticism, which, when taken and considered with the other portions of the charge, could not possibly have misled a jury of ordinary intelligence. (*Whalen* v. *St. L. K. C. and N. R. Co.,* 60 Mo. 323; *Railway Co.* v. *Whitton,* 13 Wal. 290.)

In conclusion, we are of the opinion that the whole case was properly tried and fairly submitted to the jury; that the verdict is sustained by the evidence; that the court did not err in refusing to set it aside, and that a new trial ought not to be granted.

The judgment of the district court is affirmed.

RESPONSE TO PETITION FOR REHEARING.

By the Court, HAWLEY, C. J.:

1. The argument of appellant's counsel upon rehearing is principally based upon the proposition that E street, in Virginia City, where the accident occurred, is not a public street.

It is contended that the evidence shows conclusively that the *locus in quo* was in the private and exclusive use of the defendant as a yard and terminus, and that the plaintiff in traveling over it was a mere intruder—a trespasser upon the property of the defendant.

We are of opinion that the pleadings admit it to be a public street. It is so alleged in the complaint, and is not denied by the answer. But independent of the pleadings, the proof offered by appellant, as well as the testimony submitted on the part of plaintiff, clearly establishes the fact that E street was a public street opened to all foot passengers, and that the public had been accustomed at all hours of the day and night to walk thereon. To decide this case, therefore, upon the ground that it was not a public street would be introducing "a false quantity into the calculation," a quantity which neither the pleadings nor proofs sanction.

2. It is again urged that the plaintiff was negligent, and that his negligence contributed proximately to the injuries which he sustained. Numerous authorities have been cited with the assertion of counsel that "in none of these cases was the negligence of the plaintiff greater than in the case at bar." We have re-examined "these cases" with care, and shall notice them in the order presented by counsel for appellant.

*The Ill. Cent. R. Co.* v. *Godfrey*, 71 Ills. 500, was decided upon the ground that Godfrey, at the time of the accident, was a trespasser upon the private grounds of the railroad company and was therefore bound to use extraordinary care. In examining the testimony, however, it will be discovered that the plaintiff said that "when he went on to the road he looked and saw no engine." The court said: "This was

not enough. He should have kept constant watch while he was traveling along the track, for the approach of an engine. If the plaintiff had looked he could have seen the engine in time to have avoided the accident. Moreover, plaintiff was walking in the space between the tracks, and as the engine approached, to quote the language of one of the witnesses, "he just looked like he staggered up against the engine."

*Fleming* v. *W. P. R. Co.*, and *Roth* v. *M. and St. P. R. Co.*, were sufficiently noticed in our former opinion.

In *Hickey* v. *B. and L. R. Co.*, 14 Allen, 429, it was held that a passenger in the railroad cars could not maintain an action against a railroad company for injuries sustained by him in consequence of his voluntarily and unnecessarily leaving his seat and standing in an exposed condition upon the platform of the passenger car, while the train was in motion.

In *C. and R. I. R. Co.* v. *Still,* 19 Ills. 508, a collision occurred while Still was attempting to drive a two-horse team and wagon over the railroad track at a regular crossing. The facts were that Still "was sitting down in the bottom of the wagon, with his back turned in the direction from which the cars were approaching, so as to prevent his seeing them." It also satisfactorily appeared "that by looking in the direction of the cars, he could have seen them for a considerable distance, and for a sufficient length of time to have avoided all damage; and that the sound of the approaching train could be heard for a distance sufficient to give ample time to have prevented this collision." It also appeared from all the positive testimony in the case that the railroad company rung its bell for the usual distance, and that a headlight was burning. Under such circumstances, the court very properly said that the plaintiff "having placed himself in a position that prevented him from being able to see the approach of the cars, and having tied up his ears in a manner that must have prevented his hearing the approach of the trains, is certainly guilty of gross negligence."

In *Dascomb* v. *B. and S. L. R. Co.*, 27 Barb. 227, "the

plaintiff, living about a fourth of a mile from the railroad track, owning a farm divided by the track, leaves his house, with a horse and wagon, taking in his son and hired man, and drives along, upon a trot, directly upon the track of the road, without taking the slightest precaution to ascertain the dangerous proximity of the locomotive. This was negligence."

In *N. P. R. Co.* v. *Heileman*, 49 Pa. St. 60, the plaintiff, Heileman, was seated far back in his covered wagon, with the curtains closely drawn down, and drove his horse and wagon slowly upon the track in front of the passing locomotive, and a collision occurred. If plaintiff had looked out of his wagon, as he was bound in law to do, he could have seen the railroad track for seventy-five yards. He failed to use his eyes to the best of his ability, and was therefore held guilty of negligence.

In *Runyon* v. *C. R. Co.*, 25 N. J. L., 556, the plaintiff had lived for thirty years within three hundred yards of the railroad. He was driving toward the track on a slow trot, sitting down in an open wagon, with his back towards the direction in which the train was coming. In describing the facts of the collision to a witness he said: "He did not think of the road; his mind was enveloped in thought; * * he could not tell what he was thinking of; * * * as he heard the whistle he gave his horses a pull, and they went ahead rather faster than before." Had he looked he could have seen along the railroad track for a distance of several hundred yards. This being the evidence in relation to plaintiff's conduct, the court said: "It is entirely clear that he failed in showing ordinary care and diligence on his part to avoid the injury. In fact, it appears that he did not exercise any care or precaution whatever. He never even thought of it."

In *Steves* v. *O. and S. R. Co.*, 18 N. Y. 422, the testimony, as in the preceding case, presents an instance of surprising negligence and inattention on the part of the plaintiff. "After riding along parallel to and in plain sight of the railroad track for the distance of about a mile, he undertook to cross the track, his horses being upon a walk.

The day was cold and the wind blowing fresh from the north-west. He was traveling against the wind. His coat was turned up around his ears and a fur cap drawn down over them. With his hearing thus obstructed, and with abundant opportunity to see and avoid the approaching train, if he would but look, he advanced slowly upon the track." A court in such a case ought not to hesitate in saying, as was said by the court in this case, that "such negligence, such indifference to danger, is both unaccountable and inexcusable."

In *Wilcox* v. *R. W. and O. R. Co.*, 39 N. Y., 358, the plaintiff's intestate was killed while attempting to cross the track at a regular crossing. The evidence failed to show whether the deceased, before attempting to cross, looked up and down the track to ascertain whether a train was coming; but it did appear that the engine or train was in plain sight for a distance of seventy or eighty rods; and the court held, that under all the circumstances attending the transaction, it was a fair and reasonable presumption that he did not look, "for had he done so, he must have seen the engine approaching, and he could have escaped, and his life would have been saved." In the language of Grover, J.: "To walk along or stand upon a railroad track, without availing himself of the sense of sight as well as hearing to ascertain whether there was danger in such position," was negligence.

In *Havens* v. *E. R. Co.*, 41 N. Y., 296, there was evidence tending to show, that by looking the train could have been readily seen and the danger thus avoided. The supreme court held, that such evidence having been given, the lower court erred in not instructing the jury: "That an omission to ring the bell, or blow the whistle, would not excuse the deceased from the observance of proper care on his part, and that this care required him to look for trains when he had opportunity so to do, while riding in the wagon." A principle that is well settled and was clearly stated in our former opinion to be the law.

In *Wilds* v. *H. R. R. Co.*, 29 N. Y., 315, the plaintiff's intestate had an opportunity to see the train if he had

looked. This was made certain, as the court say, "upon the testimony of every witness who has spoken on the subject. That he did, in fact, see it at some time before the collision is evident, from the testimony of all the witnesses to the principal fact, for they swear he whipped his horses in order to get across before the engine should reach him." It also appeared, beyond controversy, that a flagman was stationed between the two tracks with a flag when the train and the deceased were approaching the spot where the collision happened;" and that he did " his whole duty by displaying his flag and warning passengers off."

This, in short, is one of the many cases to be found in the books where persons driving teams, seeing a train coming, determine to try the speed of their horses against that of the approaching train. In all such cases the courts have universally declared that the plaintiff is not entitled to recover.

In the *T. and W. R. Co.* v. *Goddard*, 25 Ind. 185, a case often referred to by appellant's counsel, suit was brought by Goddard to recover damages for injuries to his horses and wagon. As Gilpin (the driver) approached the track of the Chicago road with the team, a locomotive on one of the tracks of that road, with its bell ringing and making the usual noise, was about to cross the plank road; Gilpin increased his speed, thinking to pass before the locomotive, but the latter passed the crossing before him, and within ten or fifteen feet of the horses' heads. While the engine was passing the horses were somewhat excited. They were then, at most, within three or four rods of the track where the accident occurred, but Gilpin drove on at a rate of speed of six miles an hour until the collision occurred. * * * * Gilpin did not stop the team, or even slacken his speed, for the purpose of ascertaining if the track was clear before approaching or attempting to go on it; nor is there any evidence that he used any of his senses, or any precaution whatever, to ascertain whether a train was approaching." In examining the details of the testimony in this case, it is apparent that the court was correct when it said that the team "was run against the train, and not the train against the team."

We have referred thus at length to "these cases"—all that were cited by appellant on the last argument—for the purpose of showing, as we think, the facts, when fairly considered, fully warrant that in each of them the negligence of the plaintiff was much greater than the alleged negligence of Solen in the case at bar.

We recognize, without indorsing all that has been said by the courts, the general principle in the cases cited, that the plaintiff is bound to use proper care to avoid danger; that his prudence or imprudence is to be measured in proportion to the danger, and that the greater the risk, the greater the degree of care required. And if the undisputed facts in this case were so clear as to satisfy us that Solen did not use that degree of care which an ordinarily reasonable person would have used under similar circumstances, we should not hesitate to say that the district court erred in refusing to grant a nonsuit. But as to this, more anon.

3. Counsel for appellant again contend that it was, and is, our duty to decide, as a question at law, whether the plaintiff was guilty of contributory negligence.

It was not without some doubt and hesitation, and only after the most careful examination of all the authorities then cited by the respective counsel (and they embraced all, or nearly all, that are now relied upon, and several others that were not referred to in the re-argument of this case), that we arrived at the conclusions announced in our former opinion. We were then, and are now, aware that there is a great diversity of opinion to be found in the books. Courts of last resort have apparently gone to extremes upon both sides of this vexed question. If reason is the soul of the law, then our own common sense and judgment, amidst the conflict of the decisions upon this subject, must, after all, furnish the only true guide to its proper solution. Nevertheless, we propose once more to examine the authorities.

Appellant relies upon the rule as announced by Wharton in his work on Negligence, as follows: "The question of negligence is one of mingled law and fact, to be decided as a question of law by the court when the facts are undisputed or conclusively proved, but not to be withdrawn from

the jury when the facts are disputed and the evidence is conflicting." (Section 420.)

In considering this question, it must be understood that the same measure of justice, the same rule of conduct, and the same principle of law, applies to the plaintiff as to the railroad company. It must also be remembered that if the *locus in quo* is a public street or thoroughfare, then it is held in nearly all the authorities, and admitted by counsel for appellant, that (independent of any statutory provision) under the rules of the common law, it is the duty of the railroad company to ring its bell or sound its whistle; and if it fails to perform its duty in this respect, it is guilty of negligence. It is equally as well settled that it is the duty of the passenger or traveler going across or upon the track of a railroad company, to exercise reasonable care and diligence upon his part to avoid danger; and whenever such a person undertakes to cross over, or walk upon a railroad track (even where he has a right to be), without looking or listening for the approach of a locomotive or train, he is guilty of such negligence as to deprive him of the right to complain of the negligent conduct of the railroad company. In these and kindred cases, it is the duty of the court, as stated by Wharton, to take the case from the jury, and to decide as a question of law that the plaintiff was guilty of contributory negligence.

But there is another line of cases, far more numerous, of which the case under consideration is one, where the undisputed testimony leaves it doubtful to the mind of the court whether the plaintiff did use reasonable care and prudence. In such cases, the authorities almost universally agree that it is the duty of the court to submit the question to the jury. In the language of Morton, J., in *Wheelock* v. *Boston and Albany Railroad Co.*, "When the question, whether the plaintiff was using ordinary care, depends upon a variety of circumstances, and the inferences to be drawn from them as to the effect which they would have upon the motives and conduct of men of the usual prudence and intelligence, and it cannot be said, as a matter of common knowledge and experience, that the plaintiff was careless, then the law

refers the question to the judgment and experience of the jury:" 105 Mass. 206.

In *Penn. C. Co.* v. *Bentley*, the facts were not disputed, and it was urged there, as here, that upon the undisputed facts negligence was a question of law. The supreme court, in answering this argument, said: "There is no such principle, except where a man violates a plain legal duty." (66 Penn. St. 32.)

In *W. C. and P. R. Co.* v. *McElwee*, the same court say: "The law is well settled that what is and what is not negligence in a particular case is generally a question for the jury, and not for the court. It is always a question for the jury when the measure of duty is ordinary and reasonable care." (67 Penn. St. 311.)

All the authorities cited, under this head, in our former opinion sustain the general doctrine that the question of ordinary care is in most cases, even where the testimony is undisputed, a question of fact which it is peculiarly the province of the jury to determine, under proper instructions from the court. This principle, in our judgment, is well settled by the great preponderance and weight of authority, and is sustained by the common sense and sound judgment of the ablest jurists in the United States.

The question upon which the conflict of authorities, previously alluded to, arises, is not so much upon the existence of the rule as to its application in any given case. It must be acknowledged that it is not always easy to decide as to which class of cases the given one belongs. Hence, it very naturally follows that jurists, learned in the law, as well as jurors, unskilled in the science of the profession, differ as to what constitutes ordinary care in a given case.

Whenever, upon a given state of facts, there is reasonable room for doubt, for honest minds to fairly differ, both parties have the right, in our judgment, to have the question submitted to a jury.

By following this rule a judge would always have his separate and distinct duty to perform as well as the jury. It would be the province of the jury to find the facts and of the court to declare the law. But if we adopt the rule so

earnestly contended for by appellant, then, in the administration of justice, there would be no use whatever for a jury. The testimony upon the part of plaintiff in actions of this character, generally leaves the main facts undisputed. If then, from that simple fact alone, it becomes the duty of the *nisi prius* judge and appellate courts to always decide the question of negligence as one of law or of mingled law and fact, a jury trial would indeed be but a mockery and a farce.

In *French* v. *T. B. R. Co.*, as the plaintiff approached the crossing, a freight train was passing; and after the last car had passed she attempted to cross. She was driving with care and watching the road. She heard no signal and received no warning. At a point forty-six feet from the center of the track she could have seen up the track forty-six feet; at thirty feet from the crossing she could have seen the track for a long distance. She did not look in that direction when she reached those points, and gave as a reason that she did not suppose that one train would follow so closely upon another. The court, in considering these facts, said: "Whether the plaintiff was in the exercise of that due care which persons of common prudence and intelligence would exercise when placed in a similar situation, and whether she was careless in failing to look up the track at the points near the crossing where it was visible, was a question for the jury to determine in the peculiar circumstances of the case." (116 Mass. 541.)

In *Craig* v. *N. Y., N. H. and H. R. Co.*, the deceased was prevented by the buildings on either side of the highway from seeing the approaching train until he had driven upon the railroad track. The place was one across and near which engines and cars of all kinds were constantly moving. The gates were not shut across the highway, and there was no flag or lantern at the crossing, as had been the usual custom when the gates were not shut. The supreme court said: "The question whether he was negligent in proceeding in the manner he did, instead of stopping his horse, or turning about and driving back, was a question of fact for the jury." (118 Mass. 437.)

In *Maloy* v. *N. Y. C. R. R. Co.*, the court said: "Whether it was negligence in the plaintiff to walk upon the sidewalk in a dark night, without a light, was a question of fact for the jury and not a question of law for the court." (58 Barb. 184.)

In *Seigel* v. *Eisen et al.*, the supreme court refused to declare as matter of law "that the conduct of the plaintiff, in standing on the rear platform of the street car and steadying himself by holding the rail of the platform, was contributory negligence." (41 Cal. 111.)

In *Johnson* v. *W. and St. P. R. R. Co.*, the defendant asked the court to charge the jury, "that inasmuch as the evidence is undisputed that the plaintiff, of her own accord, placed her foot upon the links connecting the two cars together between the bumpers, such act of hers was negligence on her part, and she cannot recover." The lower court refused to so charge, and its action was sustained by the supreme court: "Whether, under the circumstances in which the said plaintiff was situated, it was negligence, is a mixed question of fact and law. Negligence and prudence are relative terms, qualified by the country, the age, the relations and circumstances in which an act is done or omitted. The law can give no certain fixed standard by which a jury shall be governed in inquiries of this character, for the simple reason that there is none; it only professes approximation to a standard. These questions are eminently practical, and are, says Story, more questions of fact than law." (11 Min. 306.)

In *Sehierhold* v. *N. B. and M. R. R. Co.*, 40 Cal. 447, the plaintiff's intestate was playing in the street, and found himself suddenly before the car of the defendant, and to avoid being run over, ran against a pile of timber (which the defendant had caused to be piled within eighteen inches of the track), was turned back by it and run over. The district court granted a nonsuit on the ground that the negligence of the deceased contributed to the accident. The supreme court, following the principle announced in *Needham* v. *S. F. and S. J. R. R. Co.*, 37 Cal. 410, held that the court erred in granting the nonsuit. The court

say: "The fact of negligence is generally an inference from many facts and circumstances, all of which it is the province of the jury to find. It can very seldom happen that the question is so clear from doubt that the court can undertake to say, as matter of law, that the jury could not fairly and honestly find for the plaintiff. It is not the duty of the court in such cases, any more than in any other, to usurp the province of the jury and pass upon the facts." In this case the evidence was clear that the defendant's car was being driven in the most reckless and culpable manner. On this point the court said: "We are not satisfied that, notwithstanding the negligence of the deceased, the injury might not have been avoided by the exercise of proper diligence on the part of the defendant. And besides, it may not have been negligence on the part of the deceased to attempt to cross the track at the distance before the horses testified to, had they been driven at the proper speed and under the proper control of the driver."

So in the case at bar, was it not a question of fact, for the jury to decide, whether it was negligence for the plaintiff to walk upon the railroad track in the manner and at the time he did, relying upon the presumption that the railroad company would use due and reasonable care in moving its locomotives and trains and give due and timely notice, by the usual signals, of their approach.

In *Maginnis* v. *N. Y. Cent.* and *H. R. R. R. Co.*, a train was moving backward, at night, without a light or any signal or warning at the rear, upon the defendant's track, which ran through a public street in the city of Albany. It had so nearly stopped, that to one in the rear no motion was perceptible. The plaintiff's intestate attempted to cross the street, in the rear of the train, when the speed of the train was increased, and she was run over and killed. The *nisi prius* court declined to nonsuit the plaintiff, and the court of appeals sustained its action; because, although the train did not come to a full stop, "it might be inferred that it was at the point of stopping, and that the intestate, in looking at it, was justified in supposing it to be standing still, and consequently justified in crossing the street; and

that, although there was no great suddenness to the motion, it was accelerated in order to pass Quackenbush street; and that the absence of a visible light or other means of warning at the rear end of the train while being backed through a public street of the city, constituted a sufficient fault on the part of the company to render them liable for the injury." (52 N.Y. 220.)

Upon the same principle it must be admitted that the negligence of the defendant, in this case, in not ringing its bell, or giving any signal or warning, rendered it liable for the injury to plaintiff, unless the plaintiff was guilty of negligence that contributed proximately to such injuries. And it cannot, it seems to us, upon any substantial reason, be denied that the undisputed facts were not as sufficient to authorize the court in this case as in the case last cited, to submit the question of plaintiff's conduct to the jury.

Take the case of *L. V. R. R. Co.* v. *Hall*, where the plaintiff's intestate was found dead on the railroad track between seven and eight o'clock in the evening, the night being dark. "Two coal trains belonging to the company, one coming down and the other going up, passed each other a square or two below Linden street. The down train had a head-light, the up train, by which the deceased was killed, had no head-light, and gave no warning of its approach by bell, whistle, or other signal, as it passed through the town."

There was no direct or positive evidence that the deceased either looked or listened for approaching trains. The court held that under the circumstances the case could not be withdrawn from the jury; that "it was their province to deal with the facts, and to draw from them the proper conclusion;" that the court could not assume that Hall's negligence "contributed to his death, and that it was not occasioned by the negligence alone of the company's agents in charge of the train." Again, in the course of the opinion, the court say: "If the train was without a head-light, and without giving any other notice or warning of its approach, might not the jury infer that his death was occasioned by the recklessness of the company's agents in thus running the train rather than by any want of care on his part in not

observing it in time to avoid danger."    (61 Penn. St. 368.)
The court refused to adopt the argument there, as here,
contended for by appellant, that the person injured must
have been guilty of negligence "because he was struck by
the passing train."

Now, in applying the principles of that case to this, would
it not logically follow that inasmuch as the undisputed testi-
mony of Solen did establish, to the satisfaction of the court,
that he was looking whenever he could and was listening for
the sound of the whistle or bell (it being a place where the
railroad company, in the exercise of due care, was bound to
give such warning) and could have heard such a signal if
any had been given, that it was the negligence of the de-
fendants' agents in failing to give the usual and proper
signal that caused the accident, "rather than by any want
of care on his part in not observing" the locomotive "in
time to avoid danger."

Was it not the duty of the court, under these circum-
stances, to submit the questions at issue to the jury?

Was it not the province of the jury, in this case, as well
as the case last cited, "to deal with the facts, and to draw
from them the proper conclusions?

In *Hackford N. Y. Cent. and H. Riv. R. R. Co.*, the plaint-
iff's intestate was killed while driving his team across the
railroad track.   "It was a very stormy day, snow was fall-
ing and the wind was blowing very hard.   The street, along
which the deceased was driving * * * crosses the track
at nearly right angles.   The deceased was going west; the
engine by which he was struck was moving north at about
twenty miles per hour.   There was no sign up, indicat-
ing that there was a railroad crossing at the place of the
accident—the sign that had been up having been removed.
A carman, with furniture in his cart, crossed the track just
before the deceased attempted to cross; there were other
teams approaching the track from the east.   The drivers of
the other teams stopped, seeing the approaching engine, and
cried 'whoa' to the deceased just before he got on to the
track; the deceased did not regard it, but drove on and was
instantly struck and killed. * * * As the engine ap-

proached the track the bell was not rung, nor was the whistle blown." The *nisi prius* court granted a nonsuit. The supreme court said: "The court committed a grave error in refusing to submit the question of concurring negligence of the deceased to the jury." (43 How. Pr. 245.) A new trial was granted and the court of appeals affirmed this judgment. (53 N. Y. 654.)

Numerous other cases might be cited where courts have refused to grant a nonsuit under circumstances showing as great a degree of negligence, or want of care, on the part of plaintiff, as was shown in this case. But we have certainly referred to enough to establish the fact that the views expressed by us in our former opinion are in accord with the great weight and current of the authorities upon this subject.

4. It is claimed that the court erred in instructing the jury as follows: "In considering the question of reasonable care and prudence on the part of the plaintiff, William Solen, the jury have a right to take into consideration, together with the other facts of the case, the known and ordinary disposition of men to guard themselves against danger." Instructions of this character are usually given only in cases where the facts fail to disclose the conduct of a deceased person. But we do not think appellant has any reasonable ground to complain of the language used. It was one of the tests by which the plaintiff's proven conduct was to be measured. It being "the known and ordinary disposition of men to guard themselves against danger," such conduct would be presumed in the absence of proofs to the contrary. (*Johnson* v. *H. R. R. Co.*, 20 N. Y. 65; *Gay* v. *Winter*, 34 Cal. 153; *N. C. R. R. Co.* v. *State of Maryland*, 29 Md. 438.) But when the facts are disclosed it is then the duty of the court and jury to determine whether plaintiff's conduct in the given case did show that he had used proper care to guard himself against danger. Viewing this instruction in the strongest possible light against the appellant, it could only be considered that in support of plaintiff's conduct, as proven, it was the duty of the jury to take into consideration the fact that plaintiff, as a reasonable man, would naturally guard against danger; that his

testimony was, therefore, natural and reasonable; that he must have listened and looked whenever he could (as he testified he did), and that it would be unnatural to consider his testimony false because it accorded with the known and ordinary disposition of men.

The only way the jury had of determining whether the plaintiff used due care was to bring to their aid, in connection with the proven facts, their own knowledge of the common sense and experience of mankind. (*Ernst* v. *H. R. R. Co.*, 35 N. Y. 29; *Beisiegel* v. *N. Y. C. R. Co.*, 40 N. Y. 29; *L. S. and M. S. R. Co.* v. *Miller*, 25 Mich. 274; *Smith* v. *H. and St. J. R. Co.*, 37 Mo. 292.)

The portion of the instruction complained of does not, in our opinion, authorize the jury to presume anything in favor of the plaintiff, in opposition to the facts established by his testimony.

5. It is also claimed that the court erred in instructing the jury, that "in cases of this character the law does not prescribe any fixed or definite rule of damages, but leaves their assessment to the good sense and unbiased judgment of the jury."

We agree with appellant, that it would in most cases be proper for the court to instruct the jury substantially, as laid down in Shearman & Redfield on Negligence, sec. 606, that the plaintiff might, in cases of this character, "recover the expense of his cure, the value of the time lost by him during his cure, and a fair compensation for the physical and mental suffering caused by the injury, as well as for any permanent reduction of his power to earn money." But the appellant in this case is not in a position to complain of the action of the court in this particular. If it desired to have this rule given as a guide to the jury, it ought to have prepared an instruction embodying the correct principle upon this subject, and asked the court to give it. (*Gaudette* v. *Travis*, 11 Nev. 149.) Unless the instruction as given is erroneous, or calculated to mislead the jury, we are not authorized to reverse the case upon the ground that the court did not as fully instruct the jury as it might, and no doubt would have done had its attention been called directly to the point in controversy.

The jury, under the rule, heretofore stated and admitted to be correct by appellant, was authorized to give plaintiff "a fair compensation for the physical and mental suffering caused by the injury;" and in determining this question, as we have already said, much must necessarily be left to the good sense and sound judgment of the jury.

In addition to the authorities cited in our former opinion upon this point, we think *Aldrich* v. *Palmer*, 24 Cal. 513; *Wheaton* v. *N. B. and M. R. Co.*, 36 Cal. 590; and *City of St. Paul* v. *Kuby*, 8 Minn. 171, fully sustain the court in giving the instruction complained of.

In *Wheaton* v. *N. B. and M. R. Co.*, Sanderson, J., in delivering the opinion of the court said: "In cases of this character, as we had occasion to say in *Aldrich* v. *Palmer*, 24 Cal. 513, the law does not prescribe any fixed or definite rule of damages, but from necessity, leaves their assessment to the good sense and unbiased judgment of the jury." This opinion also sustains our action in refusing to set aside the verdict as excessive.

The verdict of the jury, say the court, "will not be disturbed on motion for a new trial, unless the amount is so large as to induce a reasonable person, upon hearing the circumstances, to declare it outrageously excessive, or as to suggest, at the first blush, passion or prejudice, or corruption on the part of the jury."

In *Heil* v. *Glanding*, cited and relied upon by appellant, the lower court instructed the jury, that as there was no certain rule by which to estimate the damages for plaintiff's personal injury, "the jury will fix them at such sum as they think proper and right from the evidence." Upon an examination of the opinion, it will be noticed that the court only said that inasmuch as the case had to go back for another trial, on account of errors upon other grounds, it would be proper for the court to give a "more precise instruction" as to the measure of damages, as a guide to the jury.

In that case, as here, there was no prayer for an instruction on this point, and the court expressly say: "We would not reverse the judgment were there no other misdirection

than in what we said respecting the measure to be adopted by the jury." (42 Penn. St. 499.)

This opinion, instead of being opposed to our views fully sustains them. It is evident that the judgment ought not to be reversed upon this ground.

6. Upon the other points, again urged by appellant, but little need be said. They—as well as the questions relating to contributory negligence—were as ably and fully presented on the first argument as on the last, and were then carefully considered by the court. Our views remain the same. The expression used, in our former opinion, that if the plaintiff was at a place where he had a right to be, then the question "whether it would have been safer for him to have been elsewhere, is immaterial," must be taken with reference to the facts of this particular case, and considered in connection with the acknowledged doctrine—recognized in all parts of the opinion—that it was his duty, while walking upon the railroad track, to use due and reasonable diligence and exercise ordinary care and prudence to avoid danger.

Of course, the plaintiff could have avoided all injury by keeping away from E street; and, as the result shows, "it would have been safer for him to have been elsewhere." No man is in any danger of a collision with the locomotive or cars of a railroad company if he keeps a sufficient distance from the tracks of the road, and never attempts to walk upon or across the street through which the cars and locomotives of a railroad run. But the people of Virginia city have the lawful right to be upon the public streets, if they exercise due care, notwithstanding the fact that a right of way has been granted to the railroad company to lay its tracks and move its locomotives and trains thereon. No sidewalks had been provided whereon the foot passenger could walk with safety. There was also some testimony tending to show that the railroad company had to some extent obstructed the space between the tracks by leaving piles of lumber thereon. Moreover, the testimony showed that the ground between the tracks was rough and unbroken in places, and on the morning in question was entirely cov-

ered over with snow, while between the rails of the main track, where plaintiff was walking, it was level and pretty smooth.   Under all these circumstances the mere fact that there was "space enough" for a man to walk between the main track and the side tracks was "immaterial."   If there had been a proper sidewalk provided for the accommodation of foot-passengers, there would have been some foundation for the position sought to be maintained by appellant, that plaintiff "unnecessarily" walked upon the track.

The question whether positive testimony outweighs negative, as held in *Mackey* v. *N. Y. Cent. R. Co.*, 27 Barb. 539, and *C., B. and Q. R. Co.* v. *Stumps*, 55 Ill. 367, has no special application to the facts in this case.

The testimony of McDermott is as clear, direct, and positive, that he did not ring the bell as is the testimony of any of appellant's witnesses to the contrary.   There is nothing in his testimony, or in the transcript, which would authorize us to say, as counsel for appellant contend, that he "is unworthy of belief."   That question was submitted to the jury, and it was by them declared that his testimony was true.

In the consideration of this case, we have proceeded upon the ground that the jury were intelligent men, capable of judging of the weight that ought to be given to the testimony of the respective witnesses, and that they understood the principles of law as announced by the court.

Although our views may not have been as clearly expressed as if written by other and abler hands, yet we have no fear that any principle decided in the former opinion, or in this, will ever return "to vex the court" in its impartial administration of the law.

The judgment of the district court is affirmed.   Remittitur forthwith.